### JENNISON *v.* KNOX *et al.*

(*Common Pleas of New York City and County, General Term.* April 1, 1889.)

CONTRACTS — INTERPRETATION — AUTHOR AND PUBLISHER — DESTRUCTION OF SUBJECT-MATTER.

Plaintiff, an author, made an agreement with defendants, publishers, by which plaintiff was to furnish the stereotype plates and pay the cost of printing his book, and furnish a sum towards expense of paper and binding, and was to charge defendants with 50 per cent. of the price of the book. Defendants were to undertake the publication, furnish paper, and bind the edition of 1,000 copies, to guaranty sales, and account once in six months, and settle on the basis of 50 per cent. from the price. Plaintiff was to pay a certain sum for every copy he received. Defendants were regarded as the owners of the books, and had possession and the right of possession. *Held*, that plaintiff was entitled to recover 50 per centum of the price of books burned while in defendants' possession.

Appeal from Third district court.

Action by E. S. Jennison against Thomas R. Knox & Co. Defendants appeal.

Argued before VAN HOESEN and BOOKSTAVER, JJ.

*Benno Loewy*, for appellants.   *Henry M. Herman*, (*W. H. Secor*, of counsel,) for respondent.

PER CURIAM.   The plaintiff is an author, who, wishing to have an edition published of his work called "Christie's Choice," entered into an agreement with the defendants, who are publishers, for the publication.   The plaintiff was to furnish the stereotype plates, to pay the cost of printing, and to advance $240 towards the expense of the paper and the binding, and he was to charge the defendants with 50 per cent. of the retail price of the book.   By this we understand that he was to receive one-half of the retail price of the book, free and clear.   The defendants were to undertake the publication, to furnish the paper, to bind the edition of 1,000 copies, to push the sale, to guaranty all sales, to account once in six months, to expend $25 in advertising, and to settle "on the basis of fifty per cent. from the retail price."   When any books were delivered to the plaintiff, he had to pay to the defendant 75 cents for every copy that he received, and, when copies were sent to the newspapers for the purpose of obtaining a favorable notice of the work, the plaintiff was charged with 62 cents for every copy, and 10 cents for the postage on every copy.   The defendants were regarded by both parties to the contract as the owners of the books in their salable form.   They had the possession, and the right of possession, and all that the plaintiff could claim was 50 per cent. of the retail price of the books.   In the books themselves he had no property whatever.   Two hundred and forty of the books were accidentally burned, and the question is, is the plaintiff entitled to recover his 50 per centum of their price at retail?   The controlling question is, what was the intention of the parties?   They have made no provision for the case of the destruction of the books by fire, and our decision must depend upon the construction to be given to the written contract.   Are we to construe the contract as one impossible of performance, and to call on the defendants to perform their obligation to account for 50 per cent. of the retail price of the books, or are we to imply as one of the terms of the contract the condition that the destruction of the books should free the defendants from the liability respecting those that were destroyed?   It has been the rule of the courts to imply such a condition where the subject of the contract is a specific thing for which a substitute will not answer.   The most familiar illustrations of the rule are the case[1] in which the horse Eclipse was bargained and sold, and he died before the day of delivery; and the case[2] in which Surrey Music Hall was leased for certain concerts, but was destroyed by fire before the time for the concerts arrived.   In both cases the court held that it was a condition implied from the very nature of the contract that the destruction of the thing that was bargained for, without the fault of either party, was a good excuse for not performing the contract.   This was so, because both parties must have known when the contract was entered into that, unless the identical thing continued to exist, the performance would be an impossibility.   *Dexter* v. *Norton*, 47 N. Y. 62; Pol. Cont. marg. p. 362; Hare, Cont. 648.   But where there is a positive contract to do a thing not in itself unlawful, the contractor must perform it, or pay damages for not doing it, although in consequence of unforeseen accidents the performance of his contract has become unexpectedly burdensome, or even impossible.   In such a case, to use the language of Judge RUGGLES in *Harmony* v. *Bingham*, 12 N. Y. 115, it must be deemed the folly of a party not to provide expressly against contingencies, and exempt himself from responsibility in certain events; and, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the control of the party.

[1] Benj. Sales, § 570.                    [2] Taylor v. Caldwell, 3 Best & S. 826.

In the case before us the defendants were to publish an edition of 1,000 copies. No particular or specified copies were within the contemplation of the parties. The plaintiff furnished the stereotype plates, paid for the printing, and advanced $240 towards the expense of the paper and the binding. Any copies that the defendants might produce that were printed from those stereotype plates would answer the contract. The plates were in their possession, and they were to buy the paper, and to procure the binding to be done. Their own construction of the contract was that the plaintiff was to have all the copies printed, if he should pay them 75 cents per copy. If, after the plaintiff had ordered a number of copies, and they had been set apart for him, a fire had destroyed them, before actual delivery, the defendants would not have considered the loss by fire a good reason for the plaintiff's failure to pay them 75 cents a copy for those that were burned, nor is there any good reason why the defendants ought not to pay the plaintiff the price stipulated in the contract for those copies that were in their possession and under their control at the time that the fire consumed them. The books were at their risk until they were sold, or until the plaintiff had taken them off their hands. The contract provides that the plaintiff shall "charge the defendants all copies at a discount of fifty per cent. from the retail price;" and that the defendants shall settle, and semi-annually render an account-sales, on the basis of fifty per cent. of the retail price." They cannot render an account-sales of those books that have been burned, but the right of the plaintiff to charge them for all copies at 50 per cent. discount would be defeated, if the loss of the books by fire relieved the defendants from liability. There is no hardship in holding the defendants to this construction of the contract. They had the possession and the ownership of the books, notwithstanding that the plaintiff had printed the books at his own expense, and contributed $240 towards their outlay for paper and binding. It was in their power to protect themselves by insuring, and it is not unreasonable to say that when the plaintiff calls for the books, and is willing to pay for them, the defendants should either deliver them or account for them at the stipulated price. The judgment should be affirmed.